Shaw C. J.
delivered the opinion of the Court. The object of this process seems to be, to charge that portion of the funds in the hands of the trustees, which was intended to go to those creditors who furnished supplies and labor for the manufactory after the date of the indenture, and who did not become parties to it until after the service of the writ. But we think, that according to the principles heretofore established upon this subject, the plaintiff is not entitled thus to recover.
The law upon the subject of assignments by insolvent debtors in this Commonwealth, has grown up by a series of judicial decisions ; but these are mainly founded on a few legal principles, by reference to which it is to be determined whether any particular case falls within the established rule. The first is, that a debtor may prefer any one or more of his creditors, to the exclusion of others, and convey his property in satisfaction or security of such preferred creditor or creditors, if it be done without fraud, that is, if it be on good consideration, not at an under value, nor upon any secret trust for the grantor. An other is, that a debtor may enter into a contract with a creditor or class of creditors, to convey his property, and may actually convey it to a third person, in trust for the creditors, to the same effect as to the creditors themselves. These principles, we think, will settle the present case.
The Saco company conveyed their real ■ and personal prop erty to the trustees in December 1829, with a stipulation that the business was to go on, and that the vendors were to remain in possession till, in the judgment of the trustees, the security of their constituents should require them to take possession. There was a further provision, that this contract of *459 sale and the right to take possession should extend to all property afterwards to be acquired by the company. It was also stipulated, that all debts afterwards incurred by the company should be paid out of the funds in the hands of the trustees arising from the after-acquired property. This last provision was obviously necessary, to enable the parties to accomplish their object, of having the business go on by the company ; as no persons could be presumed to be willing to furnish supplies or perform labor, for a company avowedly insolvent, without some such provision.
These are the facts ; and the first obvious remark upon them is, that this assignment, as to the personal estate, was inoperative and void, against any creditor who should have attached before the trustees took possession. The stipulation that the vendors should remain in possession and have the use of the property, would have rendered it void, as against creditors. But it was a good executory contract, and when the possession was actually taken, in pursuance of its terms, the sale became complete. The possession accompanied and followed the deed. Bartlett v. Williams, 1 Pick. 288.
The same principle applies to the property to be acquired after the date of the indenture. It was a good executory contract between the parties, for a future sale, by deed, to take effect and become executed upon a contingency, that is, when the trustees should think it necessary to take possession.
Then, when possession was actually taken, pursuant to this contract, and with the consent of the vendors, the sale, as between the parties, was complete.
Then the question recurs, has an attaching creditor a right to interfere. The rule upon that subject is, that if the debts of the creditors who have become parties to an assignment, either directly to themselves, or to a trustee for their use, are not of an amount equal to the assigned property, the surplus is open to attachment by a creditor of the assignor. But if those debts equal or exceed the assigned prop erty,. they have the prior and better title, and nothing remains to be reached by an attachment.
Now the trustees state explicitly, that the amount of the debts of the banks and other parties to the assignment, who *460 became such before the attachment, greatly exceeds the whole amount of the proceeds of the assigned property. This is decisive of the present case, and shows that nothing was left for the attaching creditors. But the trustees were asked, whether they intended to divide the money received from the sale of the after-acquired property, among all the creditors who became such after the date of the indenture, or to pay the same to those only who assented to or became parties to the indenture, prior to the service of this trustee writ. To this the trustees answer, that, as then advised, they intended to divide it among all those creditors, whether parties to the assignment or not. And why should they not ? As between the creditors under the assignment, parties thereto before the attachment, and the attaching creditors, the former had a legal right to hold to the full amount of their debts. Now if, in consequence of trusts and stipulations, they were under legal or conscientious obligations, to appropriate a part of these proceeds, to satisfy particular claims, or to give an equal participation to other creditors, who should come in after the attachment, it is only discounting these sums out of their own funds, which, as against all other creditors of the common debtor, they have a right to hold. It is therefore no concern of the attaching creditors, how the trustees propose to distribute the proceeds of the assigned property. It is sufficient, that the trustees, representing creditors having claims to an amount exceeding the whole of the assigned property, have a good legal right to hold it; and it is a question solely between them, their constituents the creditors under the assignment, and any others having legal or equitable claims, in virtue of the trusts, covenants and stipulations in the assignment, how the proceeds are to be appropriated and distributed.[1]

Trustees discharged.

 See St. 1836, c. 238; St. 1838, c. 163; Bradford v Tappan, 11 Pick. 76, Everett v. Walcott, 15 Pick. 94.